# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-1162V

|  |  |
|---|---|
| KATRINA NAZRETH, | Chief Special Master Corcoran |
| Petitioner, | Filed: July 2, 2025 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Kirk Otto, Rawls Law Group, Richmond, VA, for Petitioner.*

*Jay T. Williamson, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On July 30, 2024, Katrina Nazreth filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on November 27, 2023. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

On July 2, 2025, I issued a ruling on entitlement, finding Petitioner entitled to compensation for her SIRVA. In this case, Respondent filed a combined Rule 4(c) Report and Proffer on award of compensation ("Rule 4(c) Report and Proffer") indicating Petitioner should be awarded $51,583.57, representing compensation in the amounts of $51,500.00 for past pain and suffering and $83.57 for past unreimbursable expenses.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Rule 4(c) Report and Proffer at 5-6. Respondent represented that Petitioner agrees with the proffered award. *Id.* Based on the record as a whole, I find that Petitioner is entitled to an award as stated in the Rule 4(c) Report and Proffer.

Pursuant to the terms stated in combined Rule 4(c) Report and Proffer,[3] **I award Petitioner a lump sum payment of $51,583.57, representing compensation in the amounts of $51,500.00 for actual pain and suffering and $83.57 for actual unreimbursable expenses, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision.[4]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[3] Because the Rule 4(c) Report and Proffer contains detailed medical information, it will not be filed as an attachment to this Decision.

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

---

KATRINA NAZRETH,

      Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

      Respondent.

No. 24-1162V
Chief Special Master Corcoran
ECF

---

**RESPONDENT'S RULE 4(c) REPORT**
**CONCEDING ENTITLEMENT TO COMPENSATION**
**AND PROFFER OF DAMAGES**

On July 30, 2024, Katrina Nazreth ("petitioner") filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act" or "Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, 42 C.F.R. § 100.3, as the result of an influenza ("flu") vaccination received on November 27, 2023.  Petition at 1.

In accordance with Vaccine Rule 4(c), the Secretary of Health and Human Services ("respondent") submits the following as his responsive report.  Medical personnel at the Division of Injury Compensation Programs, Department of Health and Human Services ("DICP") have reviewed the petition and medical records filed in the case.  Their opinion is that this case is appropriate for compensation under the terms of the Act.

1

**FACTUAL SUMMARY**

I.      Pre-Vaccination History

On November 16, 2020, petitioner underwent a total body bone scan for unspecified

arthritis which revealed symmetrical degenerative changes in keeping with osteoarthritis in her

shoulders, elbows, and wrists.  Exhibit ("Ex.") 7 at 15.  On May 25, 2022, petitioner was seen in

the emergency department for nasal packing following nosebleed.  *Id.* at 165.  Her prior medical

history at this visit noted neck pain, bilateral hand pain, right arm pain, shoulder pain, and

inflammatory arthritis dated March 26, 2021.  *Id.*

II.     Vaccination

Petitioner was 54 years old when she presented to her immunologist on November 27,

2023, for a follow-up of her chronic conditions.  Ex. 4 at 4.  Petitioner made no musculoskeletal

complaints at this visit and her medical history noted she was on diclofenac gel and a muscle

relaxant (cyclobenzaprine).  *Id.* at 4-6.  She received the flu vaccine in her right arm and a

COVID-19 vaccine in her left arm.  *Id.* at 17.

III.    Onset

On December 9, 2023, 12 days post-vaccination, petitioner presented to the emergency

and reported pain in her right shoulder that started "after she received her COVID-vaccine as her

infections disease clinic."[1]  Ex. 7 at 20.  Petitioner stated that "she had persistent pain since then"

and had pain with both active and passive range of motion of the right shoulder.  *Id.*  She denied

pain to her right elbow, wrist, and hand.  *Id.*  Petitioner's treating provider noted that petitioner

was "concerned about possible shoulder injury after vaccination" and noted that such an injury

---

[1]  Respondent avers that petitioner's vaccination record establishes that her COVID-19
vaccination was administer her left arm and that her flu vaccination was administered in her right
arm.  Ex. 4 at 17.

was "high up on the differential, but with her active and passive range of motion new onset, also consider rotator cuff tendinopathy, osteoarthritis, other." *Id*. at 23. Petitioner was diagnosed with right shoulder pain, prescribed naproxen and lidocaine patches, and advised to follow-up with her PCP. *Id*. at 24.

IV.    Treatment

Petitioner underwent an MRI on February 28, 2024, which revealed findings suggestive of adhesive capsulitis, mild supraspinatus tendinopathy, significant fraying and generation at the biceps anchor, mild articular longhead biceps tendinopathy, moderate subacromial/subdeltoid bursitis, and mild AC joint arthritis. Ex. 9 at 46.

Petitioner saw orthopedists Christopher Mazoue, M.D., and Alexander Wagner, M.D., on March 13 and March 21, 2024, respectively. Ex. 5 at 24, 27. Dr. Mazoue noted that petitioner had mildly decreased range of motion ("ROM") of her right shoulder and diagnosed petitioner with subacromial bursitis and rotator cuff arthropathy, which he attributed to her vaccination, noting "a lot of synovitis in the joint." Ex. 5 at 47. He administered a subacromial steroid injection and referred petitioner for physical therapy ("PT"). *Id*. at 48. On March 31, 2024, Dr. Wagner administered an intra-articular steroid injection in her right shoulder. *Id*. at 24.

Petitioner presented for an initial PT evaluation on March 25, 2024. Ex. 6 at 39. The therapist recommended petitioner attend PT twice weekly for eight weeks. *Id*. at 42. Petitioner attended four PT sessions from March 25 through April 11, 2024. *Id*. at 4. At her last visit, petitioner reported 4/10 pain. *Id*. at 4. Her therapist noted that she had pain with movements, but her ROM had improved. *Id*. at 5.

Petitioner returned to Dr. Mazoue on May 1, 2024. Ex. 5 at 6. Petitioner reported a reduction in stiffness and upon examination demonstrated significantly improved ROM. *Id*. She

was advised to continue her home exercise program. *Id.* Two weeks later, petitioner returned to Dr. Mazoue and reported that she had an incident where she was reaching behind the back seat and suddenly had to slam on the brakes and heard a clicking sound and "experienced sensation of her right shoulder dislocating." Ex. 8 at 31. Dr. Mazoue noted that petitioner's symptoms could "be attributed to an exacerbation of bursitis in the shoulder, rotator cuff disease, or a significant partial-thickness rotator cuff tear" and ordered a new MRI. *Id.* An MRI of petitioner's left shoulder revealed humeral avulsion of the glenohumeral ligament, extensive synovitis, partial thickness tear of the supraspinatus tendon, and mild subacromial/subdeltoid bursitis. Ex. 9 at 8.

On June 3, 2024, six months and one week post vaccination, petitioner returned to Dr. Mazoue to follow-up on her MRI. Ex. 8 at 8. She reported some pain relief after her March 2024 steroid injections but stated that the pain had since returned. After a review of her second MRI, Dr. Mazoue assessed petitioner with "significant synovitis in the shoulder, along with a small partial-thickness articular-sided rotator cuff tear, degenerative changes in the tendon, and a minor SLAP tear." *Id.* at 9. Petitioner was given a subacromial steroid injection and a prescription for prednisone. *Id.*

V.    Duration of injury

Petitioner received treatment for her shoulder injury through June 3, 2024, six months post-vaccination.

VI.    Summary of treatment

Over the course of six months, petitioner underwent the following treatment for her shoulder symptoms:

- Four sessions of PT;

- Three cortisone injections; and

4

- Three prescriptions medications (naproxen, lidocaine, prednisone).

## ANALYSIS

As noted above, DICP has reviewed the petition and medical records filed in this case and has concluded that compensation is appropriate.  DICP has concluded that petitioner's alleged injury is consistent with SIRVA as defined by the Vaccine Injury Table.  Specifically, petitioner had no history of pain, inflammation, or dysfunction of her right shoulder prior to vaccination; pain occurred within 48 hours after receipt of an intramuscular vaccination; pain was limited to the shoulder in which the vaccine was administered; and no other condition or abnormality has been identified to explain petitioner's shoulder pain.  42 C.F.R. §§ 100.3(a), (c)(10).  Additionally, based on the medical records outlined above, petitioner suffered the residual effects of her condition for more than six months.  Therefore, based on the record as it now stands, petitioner has satisfied all legal prerequisites for compensation under the Act.  *See* 42 U.S.C. § 300aa-13(a)(1)(B); 42 U.S.C. § 300aa-11(c)(1)(D)(i).

## PROFFER

I.    Items of Compensation

A.    Pain and Suffering

Respondent proffers that petitioner should be awarded $51,500.00 in pain and suffering. *See* 42 U.S.C. § 300aa-15(a)(4).  Petitioner agrees.

B.    Past Unreimbursable Expenses

Evidence supplied by petitioner documents that she incurred past unreimbursable expenses related to her vaccine-related injury.  Respondent proffers that petitioner should be awarded past unreimbursable expenses in the amount of $83.57.  *See* 42 U.S.C. § 300aa-15(a)(1)(B).  Petitioner agrees.

5

These amounts represent all elements of compensation to which petitioner is entitled under 42 U.S.C. § 300aa-15(a).  Petitioner agrees.

II.        Form of the Award

Petitioner is a competent adult.  Evidence of guardianship is not required in this case. Respondent recommends that the compensation provided to petitioner should be made through a lump sum payment as described below and requests that the Chief Special Master's decision and the Court's judgment award the following[2]:  a lump sum payment of $51,583.57, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner.

- **Summary of Recommended Payment Following Judgment**

  Lump sum payable to petitioner, Katrina Nazreth:          **$51,583.57**

## CONCLUSION

Respondent recommends that the Chief Special Master enter a decision finding petitioner entitled to compensation for a right-sided SIRVA occurring within the Table timeframe following petitioner's November 27, 2023 flu vaccination, and that the court award **$51,583.57** for all damages available under Section 15(a) of the Vaccine Act.  This amount does not include reasonable attorneys' fees and litigation costs, which will be determined at a later date.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

---

[2]  Should petitioner die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief.  In particular, respondent would oppose any award for future, unreimbursed expenses, future lost earnings and future pain and suffering.

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

COLLEEN C. HARTLEY
Assistant Director
Torts Branch, Civil Division

/s/ *J. Travis Williamson*
J. TRAVIS WILLIAMSON
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146, Ben Franklin Station
Washington, DC 20044-0146
Tel:  (202) 598-1099
Jay.t.williamson@usdoj.gov

Date: June 6, 2025

7